IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD R. NEWCOMER,

       Plaintiff,                        05cv1595

     v.                              ELECTRONICALLY FILED

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## MEMORANDUM OPINION

**July 31, 2006**

    **I.**    **Introduction**

Plaintiff Richard R. Newcomer, brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") benefits under title XVI of the Act. Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the memoranda of the parties, and the administrative record, the Court finds the ALJ's decision is not supported by substantial evidence, and therefore will grant Plaintiff's motion for summary judgment, deny the Commissioner's motion for summary judgment, and remand for further proceedings.

1

## II.      Procedural History

Plaintiff applied for DIB on April 16, 2004 and for SSI on March 25, 2004, alleging disability since April 23, 2003 (which is the day after his previous claim had been decided against him) due to lower back pain and his history of cervical spine fusion.  The application was denied initially and upon reconsideration, and on June 22, 2005, a hearing was held before ALJ Karl Alexander at which plaintiff testified, as did a vocational expert.  Plaintiff was represented by his current counsel at the hearing. The Appeals Council denied plaintiff's request for review on September 19, 2005.

The ALJ found that plaintiff has severe impairments, namely a history of degenerative disc disease in the cervical spine, status post discectomy and fusion, and degenerative arthritis/ disc disease of the lumbrosacral spine, but not so severe as to qualify as a Listed Impairment in 20 C.F.R. Appendix 1, Subpt. P, Regulation No. 4.  The ALJ also found plaintiff could not perform his previous work (which included janitor, laborer, warehouseman and meat cutter) but that he retained the Residual Functional Capacity ("RFC") to perform a significant range of light duty jobs that were available to him in the national economy.  The ALJ therefore found plaintiff was not disabled, based on his assessment of the medical evidence and plaintiff's testimony, the testimony of the VE and reference to the Medical-Vocational Guidelines.

In making his determination, the ALJ discounted plaintiff's credibility and disbelieved plaintiff's subjective complaints of the severity of his pain, based on his findings that plaintiff appeared to be addicted to prescription pain medication, exaggerated his symptoms and complaints of the severity of his pain and its debilitating effects, had a sporadic work history, and that he applied for benefits so soon after his cervical spine surgery that it seemed he was trying to

use his surgery and injury to collect benefits from the SSA or Pennsylvania Worker's Compensation. The ALJ also: (i) rejected the unequivocal opinion of plaintiff's treating orthopedic surgeon, Dr. William J. Mitchell, M.D., that plaintiff was unable to perform any work on a regular and continuing basis because of his back and lumbar spine condition and pain, based on the ALJ's personal experience and "knowledge" that Dr. Mitchell was frequently referred patients by lawyers whose clients seek worker's compensation benefits in unnamed cases, wherein the ALJ did not believe the symptoms of those other claimants matched Dr. Mitchell's diagnoses; (ii) discounted the corroborating opinion of plaintiff's treating family physician, John Chalfant, M.D., because Dr. Chalfant accepted plaintiff's subjective complaints uncritically and without reservation, and was unable to see all the inconsistencies that the ALJ was able to perceive in plaintiff's subjective accounts; and (iii) rejected the consistent opinion of plaintiff's chiropractor because a chiropractor is not a qualified medical source.

The ALJ found particularly compelling the evidence that the doctor who performed his surgery in 2001, Arthur H. Palmer, M.D., saw plaintiff for follow up from the surgery a couple of months later, and found plaintiff to be "doing quite well" and that he would be disabled from the surgery for only about 90 days.

### III.    Standards of Review

Judicial review of  the Commissioner's final decisions on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

---

[1] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the

transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent and applicable to those rendered under Title XVI.  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court

<hr />

plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[2]Section 1383(c)(3) provides in pertinent part:
    The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both

medical and non-medical, that support a claimant's subjective testimony about symptoms and the

ability to work and perform activities, and must specifically explain his or her reasons for

rejecting such supporting evidence, especially when testimony of the claimant's treating

physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir.

2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v.

Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her

evaluation of medical records and documents for that of a treating physician: "an ALJ is not free

to set his own expertise against that of a physician who presents competent evidence" by

independently "reviewing and interpreting the laboratory reports" and other objective medical

evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must

demonstrate an inability to "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant

is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner

utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See

Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized

this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is
> currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a
> claimant is found to be engaged in substantial activity, the disability claim will
> be denied. . . . In *step two*, the Commissioner must determine whether the
> claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the

claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, she will be deemed disabled where she is nevertheless unable to engage in "any other kind of substantial gainful

work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A).  In order to prove disability under this second method, plaintiff first must demonstrate the existence of a medically determinable disability that precludes her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that she is unable to resume her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(B), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a Listed Impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he or she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective

9

description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c) (2002).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at  1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may

discount claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d  Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ ALJ

11

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and]
> must provide some explanation for a rejection of probative evidence which
> would suggest a contrary disposition. . . . The [Commissioner] may properly
> accept some parts of the medical evidence and reject other parts, but she must
> *consider* all the evidence and *give some reason for discounting* the evidence she
> rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although ALJ may weigh conflicting medical and other evidence, he must give some indication

of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed

to mention significant contradictory evidence or findings, Court was left to wonder whether he

considered and rejected them, or failed to consider them at all, giving Court "little choice but to

remand for a comprehensive analysis of the evidence consistent with the requirements of the

applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a

residual functional capacity determination, the ALJ must consider all evidence before him. . . .

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the

evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of

such an indication, the reviewing court cannot tell if significant probative evidence was not

credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

     However, a medical statement or opinion expressed by a treating source on a matter

reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not

dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683

(3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527

(1989) indicates that [a] statement by your physician that you are disabled or unable to work does

not mean that we will determine that you are disabled. We have to review the medical findings

and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) and 20 C.F.R. §416.927(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) and 20 C.F.R. §416.927(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. § § 404.1527(b), (d) and 416.927(b), (d) (2002).[3]  Medical

---

[3]

Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d) (2002) and § 416.927(d). Subsection (d)(2) describes the treatment relationship," and states:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a

opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. § § 404.1527 (e)(1-2) and 416.927 (e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[4] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination

_____

> treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § § 404.1527(d)(2) and 416.927(d)(2) (2002) (emphasis added).

[4]

> SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2); 20 C.F.R. § 416.927 (d)(2). *See* note 3, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6); 20 C.F.R. § 416.927 (d)(1-6).

While "a chiropractor's opinion is not 'an acceptable medical source' entitled to controlling weight," *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999), citing 20 C.F.R. § 416.913, it may be considered by the ALJ, especially where it corroborates the opinions and findings of qualified medical sources.

###### IV.    Discussion.

Unless there are legally adequate reasons for rejecting plaintiff's subjective complaints about his continuing, ongoing pain and its debilitating effects and his treating orthopedic surgeon's opinion that plaintiff is unable to perform any work on a regular and continuing basis, plaintiff is entitled to SSI and DIB as of April 23, 2003 due to his history of degenerative disc disease in the cervical spine, status post discectomy and fusion, and degenerative arthritis/ disc disease of the lumbrosacral spine back pain and the pain and debilitating effects.  There *may* be legally adequate reasons, but this ALJ has not enunciated them.

The ALJ said he found plaintiff was "not fully credible," which is an understatement - in fact, the ALJ rejected practically everything plaintiff had to say because, among other things, he believed plaintiff overused prescription pain medication, that he magnified his symptoms and complaints of the severity of his pain and its debilitating effects, he had a "sporadic" work history, and he applied for benefits so soon after his operation that it suggested (to the ALJ) that plaintiff was just trying to parlay his surgery and injury to collect benefits from the SSA or Pennsylvania Worker's Compensation.  (Plaintiff's attorney states that he would have advised plaintiff to file an application protectively, as soon as he could after the operation.)

The ALJ also soundly rejected Dr. Mitchell's unequivocal medical opinion, made after 11 or so appointments and evaluations of numerous tests over an 13 months period, as thoroughly and accurately set forth in Plaintiff's Brief in Support of Motion for Summary Judgment, at 6-12, 19-20, and 22-23, because, in the ALJ's own experience, "a great many of Dr. Mitchell's patients are recipients of workers' compensation who have been referred to him by their attorneys. The Administrative Law Judge has seen a number of cases in which persons on workers'

compensation have regularly visited Dr. Mitchell over months and years without experiencing any ascribed improvement in their condition.  In spite of relatively benign physical examinations, the undersigned has observed Dr. Mitchell to state that such persons are incapable of any and all work." R. 21. The ALJ does not identify the "other patients," nor does he discuss the numerous tests administered by Dr. Mitchell in this case and explain why he, the ALJ, does not find them persuasive, except that the ALJ opined that <u>he</u> would have performed the "Waddell test" for malingering, not the "Hoover malingering test" which Dr. Mitchell, a Board Certified orthopedic surgeon, chose to perform.  Nor does the ALJ explain why Dr. Mitchell's findings and views in unidentified other cases has some bearing on his findings and prognoses in plaintiff's case, which must be independently evaluated.

After careful review of ALJ's decision, the respective briefs of the parties, and the relevant portions of the administrative record and medical evidence, the Court finds that the ALJ's decision is too long on innuendo, speculation and personal opinion, and far too short on discussion of facts, medical evidence of record that contradicts Dr. Mitchell's opinion, and discussion of Dr. Mitchell's medical findings (as opposed to his opinion) based on testing and the ALJ's reasons for rejecting those findings ( which were supported at least in part by other medical evidence of record).  The Court finds, therefore, that the determination of the ALJ that plaintiff is capable of performing a significant range of light work available in the national economy is not supported by substantial evidence.

**VI.     Conclusion**

The Court has reviewed the ALJ's findings of fact and decision, and determines that his finding as to plaintiff's RFC, his credibility and Dr. Mitchell's opinion as to disability is not

supported by substantial evidence.  Accordingly, the Court will grant Plaintiff's motion for summary judgment, deny the Commissioner's, and remand for additional proceedings consistent with this decision.  Upon remand, if the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence he believe[s is] needed to make a sound determination." *Ferguson*, 765 F.2d at 36.

       An appropriate order will follow.


                    s/ Arthur J. Schwab
                    Arthur J. Schwab
                    United States District Judge


cc:    All counsel of record as listed on ECF docket